Good morning, Judge Berzon, Judge Miller, Judge Van Dyke. May it please the Court, my name is Ramsey Avedu. I represent the appellant. In this matter, this is an appeal of a dismissal of a securities fraud class action lawsuit by the District Court in San Francisco. I usually start with the statutory text in such cases, but I don't think it's in dispute. We're subject to the dual pleading requirements of Rule 9b and the PSLRA for pleading falsity, and that's the only issue the District Court reached below in dismissing this case with prejudice. I hope that the primary question that animates our discussion today in the Court in deciding this appeal is did defendants and appellees give a reasonable investor the impression of a state of affairs that differed in a material way from the one that existed at Cloudera during the class period. That is not my formulation. That's the formulation of this Court in interpreting the falsity standards laid out by Congress in the PSLRA. I cite Atosa Genetics, Berzon, and Brody for that formulation. If the Court determines that the answer to that question is yes, the District Court should be reversed, and I think that the answer to that question is yes. And how do we know? This case is unique, Your Honors, in the sense that it's really about contradiction of class period statements with post-class period statements. During the class period, the company touted its purported product capabilities, specifically its cloud-native architecture and its cloud-native software. At the end of the class period, when the company's share price fell 48.8% in a single day, market analysts were incredulous at the company's state of affairs. But the footprints in the snow for both falsity and Siena in this case is the individuals who replaced the CEO of the company during the class period, Defendant Riley, who, by the way, was canned on the last day of the class period and unceremoniously removed from the company. And I'd like to take the Court, if I could, to 2 ER 136, where Defendant Riley's replacement, Defendant Cole, who we note was not named, we did not name Defendant Cole or Defendant Bearden as fraud defendants. They're named as strict liability defendants for signing the defective merger registration statement under Section 11. And Defendant Cole, who's now replaced Defendant Riley, and this is six months, I'm sorry, three months or so after the class period ended, responds to a question from a Deutsche Bank analyst, Carl Kirstead. And he says, and I'd like to read this into the record because it's important, and I think in terms of impressions during and after the class period, this matters. I'm the new guy here, but I appreciate your question. And note, I mean, I think that some of our challenges were self-inflicted. As it relates to sort of the competitive pressures, the merger was very powerful to create the Hadoop market leader on-premise, right? There really isn't a player who could do what we do on-premise, which is a good market. Where we see challenges would be for those customers who are moving workloads to the cloud, where there's never even a competition. Where we compete, i.e., on-premise, we've got a good game. Where they just move because a line of business says, okay, I want to spin up an analytic workload, we may never see that. I would say that is a less than lucid statement to me. I mean, I take the statement to be evidence of falsity only if we accept the premise that the prior statements about the cloud and about cloud native had some sufficiently definite meaning that the later statement could show them to be false. And what the district court, I mean, both Judge Koh and Judge Chesney thought was that cloud is kind of a vague term. It's a term whose meaning has evolved over time. And what is missing from the complaint is some showing that it had some specific meaning and would have been understood in the way that you want us to understand it. So what is your answer to that? That's a fair question, Your Honor. And I'd like to divide this up into two different district courts because we had to deal with two different judges. When Judge Koh dismissed the complaint with respect to the statements that are at issue here, she accepted, as district courts are required to accept, our well-pled allegations is true. Judge Koh's major concern, and I'll hasten to add it was a fair one, was I need to know that the technological definitions that you provided in the first amended complaint that's before me applied temporally to the class period. So when we amended the complaint, that's precisely what we did. We said the definitions that we used, that we derived from one of the insiders at the company, Aaron Murphy, we said clearly that these definitions applied throughout the class period as well. As I read our decision in, I don't know if it's Wocos or Wochos against Tesla, when you're relying on a claim that the words that are alleged to have been false had some specialized or technical meaning, you need to plead facts showing that they would have been understood in that way. And other than sort of the assertion that that's the meaning they had at the time, I'm not sure where you've done that. So we do that in the complaint. Judge Koh also asked us to drop footnotes indicating where we got some of this information from. And so in pleading the complaint, Your Honors, we focused on gold standard industry definitions of cloud architecture and cloud native, and that's what's reflected in the complaint. Are these in paragraphs 14 and 15 of the second amended complaint? They don't have any sources in them. Can I just assert that these were understood by reasonable investors to mean? So replatforming is in footnote 11, for instance. And we've got in footnote 12, Clio knowledge base on-premise versus cloud. So we provide those citations. But the one issue that I think is important to consider here is that this is the first complaint that Judge Chesney had before her. If all that's lacking from the complaint, and I don't concede that it's lacking from the complaint, is to provide source definitions for these terms that existed during the class period, we're happy to do so. We think it's an easy fix. We think that under eminence capital, we certainly should have gotten a chance from Judge Chesney to do that. Why do you need to get a separate chance from each judge? Judge Coe identified precisely this problem and said that's what's lacking and said failure to cure the deficiency will result in dismissal with prejudice. And then you file another complaint that doesn't cure that deficiency. Why can't Judge Chesney, she didn't quite say this explicitly, but effectively say, well, Judge Coe gave you the warning, you had a chance, you haven't done it, and now I'm dismissing with prejudice? Because we did do it. And if you read the definitions that we provided in the complaint about these terms, these are the industry standard terms. That's an important answer, I guess. But if we were to conclude you didn't do it, have you just conceded that? I think his question was about the prejudice issue. So if you didn't do it, then it was okay to, you got the warning from Judge Coe and Judge Chesney, it was okay for Judge Chesney to say you haven't done it, assuming that you didn't do it. No, I don't concede that, Your Honor. But then I think, as I understood Judge Miller's question, it was like, why is it not enough to say this is what you need to do, and if you don't do it, I'm going to dismiss, and then the next time around, in this case a different judge, but for obvious reasons. But why is it not okay for him to say you didn't do what I asked? Because at this point, I think, you know, when you have a judge change midstream in a case, you know, I think the standard has to be a little bit deferential towards the plaintiffs, in the sense that Judge Coe had an institutional knowledge of the case. She asked us to, Judge Coe never contested our terms. She never contested our sources. What Judge Coe said is effectively, I accept your definitions as true. What I need to know is that they applied consistently throughout the class period. And that's what we pled throughout the complaint, that the terms and definitions that we adopted from Aaron Murphy after the class period applied throughout the class period. And I think if Judge Coe had an opportunity to look at this complaint again, she would have said, you fixed it. What Judge Chesney did in dismissing the complaint with prejudice is say, I don't believe your definitions. She held us to a summary judgment standard for these definitions, and I think that's clear in her opinion. And she moved the goalposts. And so we attempted- I'm not sure that's quite fair in describing what she did. Isn't what she did, I'd say I'm not believing it, but that you haven't pleaded facts other than just your own assertion of what the words mean. I think she was looking for pleading facts like treatises or trade publications or experts or some evidentiary basis for thinking that that's really what the word would be understood to mean, right? I understand. And at our brief, I believe it's our opening brief at page 15, we provide dictionary definitions of these terms. We don't believe that it requires an expert to define these terms. We know that cloud means internet. That's in the complaint. And we know that native means indigenous. So it's software that's designed originally for the cloud. And here, what the company decided to do was take its on-premise software and put it in the cloud, which is called cloud washing. And it's a deceptive way of trying to make an on-premise software like Cloudera's during the cloud's period appear cloud native. It's akin to taking a lawnmower engine and putting it in a Ferrari and calling the Ferrari a Ferrari and selling it at the price that Ferraris are sold for. And defendants nowhere in their brief deal with this allegation of cloud washing, and we drop footnotes addressing and defining what cloud washing is. We define what replatforming is. We define what cloud native is. And if the standard is that we need experts to come in and opine on what these relatively straightforward definitions are, I think it puts plaintiffs in an untenable position at the pleading stage because it's akin to summary judgment. And all we need to do is state a claim, and we believe we've done so. We believe that we satisfied Judge Koh's concerns on not the foundation of the definitions, but really the temporal aspect of the definitions. Did it apply during the cloud's period? And I believe that we pled that. Do you want to reserve the rest of your time? Yes, thank you, Your Honor. Mr. Palmore. Thank you, Your Honor. May it please the Court, Joseph Palmore for defendants. The district court correctly concluded that the complaint lacked the particularized allegations of falsity required, and that judgment should be affirmed. Plaintiffs' claim rests on the fundamental allegation that the defendants claimed that they had a cloud native product when they didn't. But critically, they never offered particularized allegations of what that term or the cognate terms meant during the class period. They have a definition in the second amendment complaint. It is not attributed. They say they could attribute it. But it does seem fairly self-evident what it means. It means whether this was built for the cloud or whether it was built for something else and adapted to the cloud. Well, Your Honor, that's not how they've argued this case below, really until their reply brief. These dictionary definitions appear for the first time in the reply brief. Instead, the definition that they have litigated this case from the beginning on is paragraph 300. This is 2ER207. It's based on the Arun Murthy article. And this is where they get these core material attributes that they say are inherent in any cloud native product. And, in fact, they put cloud native in quotations here as if Mr. Murthy in his blog post defines these terms. But the terms, as Judge Chesney pointed out, don't appear in this blog post at all, much less is there any kind of glossary or definition of technical terms. But this is where they draw these core material attributes. And in the same reply brief where they go to these dictionary definitions for the first time, they also say on page 6 that they're relying on what they call detailed, deeply researched technological definitions. And that's the core material attributes, which they say in paragraph 300 are containers, something called Kubernetes, seamless scalability, security, and elasticity. So they're saying that's what this term meant during the class period. And the Cloudera defendants lied when they said their product was cloud native. Was that in the first written complaint? That was in both, Your Honor. And so there were two problems. One is that the source they cite, the Murthy article, doesn't define these terms at all. So they have no particularized allegation of the specialized meaning. This goes to your point, Judge Miller, about the Wacos versus Tesla case. They have no particularized allegation that the term means what they said it means. And then the related problem is they have no contemporaneous definition. They themselves pled that this is a fast-evolving market. That's paragraph 310 of their complaint. And so they're pulling a document that was after the class period. It was years after many of these statements were made. And they're saying, well, that shows what these statements meant, what these terms meant. And as Judge Chesney recognized, there are two problems with that. One, the blog post and nothing else they've cited actually offers a definition of these terms. And two, it's not contemporaneous. And I think that this is critical because to be false or misleading, a statement has to be objectively verifiable. Well, suppose it meant what I think it's commonsensically means, i.e., whether this was created for the cloud originally or whether it was a location-based system that was transformed into a cloud-based system. That's what I understood their underlying contention is here. If it meant that, would the complaint be sufficient? No, Your Honor. It wouldn't be because there are no particularized allegations in the complaint that it wasn't. It wouldn't satisfy that definition. They just assert that it doesn't, but you've got to do more under the PSLRA. You've got to come forward with specific evidence or sources. Often, plaintiffs will have confidential witnesses, and they will have contemporaneous evidence that a statement was false. And they don't have anything like that here. But I would like to dispute the premise slightly of what you're saying. First of all, as I mentioned before, this dictionary definition idea and argument appeared for the very first time in their court of appeals reply brief way too late. And also, I don't think that that's a term that's objectively verifiable. If I say I'm a native of Texas, I'm saying I was born in Texas. I don't know what it means for a technological, highly complex product like this to be born somewhere or born on the cloud. It doesn't really make any sense. And I think that they chose for good reason not to litigate the case that way and instead to rely on this very technical definition below and even in their opening brief about the core material attributes because they recognized they needed to latch on to something that was more concrete than this kind of notion of native. Some of the statements are run natively on the cloud. What does that mean in an everyday sense? It's not clear at all. And without the capability of objective verification, we just don't know whether these statements are puffery. We can't conclude that they're false. There were statements in the record that they challenged initially that they no longer challenged optimized for the cloud, leading competitor in the cloud, cloud native runs natively. These all just seem to be saying this is a good cloud product. In the absence of any objectively verifiable definition, that's the conclusion that we're left with. Can I change gears a minute? Mr. Abadou began with the question of a different issue, which is whether the later statements could be relied upon as contradicting the earlier ones. And there is, as I recall, well, there's a lot of discussion in the briefs for that question in the district court orders. So why – I didn't find the particular language he was relying on particularly illuminating, but as a general matter, there are other post-class period statements relied on to demonstrate that the earlier assertions were not true. Why isn't that – I understand that that wouldn't be useful for CENTER because it doesn't prove what anybody knew two years earlier, but why isn't it relevant to whether it's factually correct? Because you don't – because we don't know whether these are factual assertions. So the same definitional problem infects all the statements that they're relying on, right? It's not – but because the way it was said, I believe, in the briefs and in the opinions was the individual – at the earlier time or what the company thought at the earlier time, but that's not pertinent. Right, but we don't know what the speakers at the later time meant either because we don't know what these terms mean, right? So at a later time, a speaker says, we now have a competitive cloud-native product, right? I'm sorry? If a speaker at the later time says, we now have CDP, a competitive cloud-native product, and what plaintiffs seem to argue is, ah-ha, you've just confessed you didn't have one before, right? And there are two responses to that. One, to the extent that they're latching on the, like, well, now we're more competitive than we used to be before, that's just kind of a sobering recognition of market realities that doesn't conflict in a factual way with earlier optimistic statements. But to the extent that they're saying, ah-ha, that means you didn't have a cloud-native product before, then we're right back into the definitional problem. We don't know what any of these speakers meant by cloud-native because they haven't offered a concrete definition of it in the particularized way they have to under 9b in the PSLRA. I don't think they even use the term cloud-native. What they seem to me, or if you kind of infer from what they said, is we didn't have a system that was created specifically for the cloud before, but now we do. I'm not aware of any post-class period statement that is articulated in the way that you're suggesting, Your Honor. I mean, I think what these post-cloud period statements generally are, are, look, there was an earnings miss, there was a recognition that the company was not as competitive as it had hoped to be, and that there were after-the-fact statements to that effect, largely by new management, different speakers, sometimes years after some of these initial statements were made. And that doesn't establish the falsity of anything that came before. It's not an I know it, I knew it all along type statement. It's not even a factual assertion that the core material attributes that were supposedly promised didn't exist. And that would be the burden here, right? To the extent that they're saying, when you said this product was cloud-native, you promised Kubernetes, containers, all the other things on that Murthy list, even though he wasn't defining the term. They would need to have, ideally, contemporaneous evidence, and one would think they could get it if the product didn't have the core material attributes that it was promising. Or, you know, there might be a narrow path to later statements being used as part of a case. If the later statement said, we've never had containers, Kubernetes, and the list. But they don't have that. They have use of these kind of catchphrases, cloud-native, cloud-architecture, hybrid cloud, none of which are defined, all of which are not amenable to the kind of falsifiability that is required to build a securities fraud claim on. And as I alluded to, there's really a separate but related problem, which is even if you accept all of their definitions, they haven't alleged with particularity that the products actually lacked any of these core material attributes. To be sure, they say that. They just offer the conclusion. But cases like Ronconi, Vantiv, make very clear that it's when you're making a statement of assertion of fact like that, and if you don't say that it's on personal knowledge, that that's an information and belief assertion, whether you use that phrase or not. And under the PSLRA, you've got to provide the particularized basis for that belief. Site sources offer some specific evidence. And again, they don't have anything. They have no internal documents, no confidential witnesses, anything suggesting that the products actually lacked these core material attributes on which they have rested their entire case. Could you address the question of leave to amend? I mean, so if we agree with you that this complaint is deficient, Judge Chesney's discussion of why the dismissal was with prejudice was fairly limited, and in particular she did not say, you know, I'm finding that it would be futile to amend. So why would it not be appropriate for them to have another chance? Well, Your Honor, I mean, I think the reasons were quite evident. You have to look at the whole course of proceedings, right? Judge Koh said you haven't offered a contemporaneous definition. Try again. And also respond to the other arguments that the defendants have made. And then Judge Chesney says you haven't done, you haven't followed the very specific roadmap that Judge Koh laid out for you. And having failed to do that, you shouldn't be afforded another chance. I mean, I think the path of the district court is quite apparent, and I think it's important to note how they purported to address Judge Koh's cited deficiency, which I heard counsel to concede was one. They just added a sentence saying the definition, these terms meant the same thing during the class period that they mean now, period, full stop, no citation to anything. They interspersed at the time, at the time, at the time, during the class period, throughout the complaint. I think that's how they chose to address it. And having been given that chance, they shouldn't have yet another chance to do the exact same thing they'd already been told they had to do. So cases like Nguyen and Zucco Partners that we rely on in our brief are really on all fours with this. There had been an offer, a grant of leave to amend. The amendment had not succeeded, had not been upheld as consistent with the pleading standards, and leave to amend was denied. So they had been given one chance to fix it, and they had failed. And this court in both those cases said there was no abuse of discretion. And it is an abuse of discretion inquiry when you have a failure to correct an identified defect in a complaint, and I don't think this is remotely an abuse of discretion. Thank you. If the court has no further questions, we would ask that the judgment be affirmed. Thank you. Mr. Pelmar? Mr. Abadou, you have just under three minutes left. I'd like to just make a few points in closing. I'll note that nowhere in defendant's papers, anywhere, I'm sorry, do they dispute any of our definitions. Nowhere do they say this definition is incorrect. And there's a reason for that. The definitions are accurate. In paragraph 14 at 2ER83, we define cloud native. If you skip to paragraph 298 at 2ER206, again you've got another concession, this time I believe in December 2019, from I believe it's defendant Cole, who says we like where you are on premise, but you don't have the offering that we're looking for in terms of ease of use, consistency, security, governance, et cetera. If you compare his statement, what he's saying is we don't have at this point a cloud native product because the definition of cloud native is ease of use, consistency, security, governance is precisely the definition we provide in that paragraph. And where do we get that information from? We got it from Oracle, who's the gold standard, one of the gold standards from Oracle Corporation. So as part of our investigation, and this is I believe at page 15 of our opening brief, we say where we got this information from. And so nowhere do defendants dispute any of these definitions. They're saying it's not enough, you haven't provided citations, but they never say you're wrong, and that's important. With respect to what Judge Berzon raised about the inconsistent statements during the class period and after the class period, I think it's important. In 2021, this is over a year and a half after the class period, Mr. Bearden, who became CEO of the company, says we've only had hybrid cloud offerings in the market for a few months now. That's at 2ER181. At 2ER180, by contrast, defendant Riley represented that as of 2018, we offer it in a hybrid fashion. I challenge counsel to reconcile those two statements. What counsel did in their answering brief was say, well, there's a difference between offering and capability. Well, there's not really a difference in this context between offering and capability. But if you look at it, we've only had hybrid cloud offerings in the market for a few months now. That's in 2021. And in 2018, you've got the CEO of the company saying we offer these products in a hybrid fashion, which means on premise and in the public cloud. I'd add one more thing with respect to leave to amend since my time is running short. In the cases defendants cited on leave to amend, those were third or fourth amended complaints. We've had two shots, Your Honor. If the only deficiency here is adding citations, saying we got this information from Oracle, adding an expert report saying that these definitions are valid, we can and should be... I am a little mystified. The definition that you're now relying on is a technical definition and not the more common sense definition that you do discuss in your reply brief. And I find that it seems to me that with the technical definition, you have a harder time demonstrating the falsity rather than the simple notion that... I had understood your overall point being they said that they had a system that was built for the cloud, but in fact they didn't until much later. That's correct. But this definition doesn't really fit into that. Well, there's another one, which is... Defendant Riley says, our cloud-native platform is enabling enterprises and businesses to move their workloads to our company. At the end of the class period, an analyst says to the company, is what really is happening here the fact that enterprises are moving their workloads off your platform? Is that what's really happening? A company's share price doesn't get cut in half in a single day for no reason. When analysts at the end of the class period said, we relied too heavily on taking management at its word about their product capabilities and things of that nature, we were wrong to rely on management's word. That's troubling. One analyst came out and just said it. Cloudera doesn't have a cloud solution. All of that matters in terms of pleading falsity, also Cyanar. But at a bare minimum, with respect to amendment, the cases they cite, this is a technical, difficult area of the law to plead. I can see that it should be. Accusing somebody of fraud is a serious accusation. But in eminence capital in Lopez, this court held that leave should be freely granted in securities cases, and I think this is one of them. Thank you, Your Honors. Thank you. We thank both counsel for their arguments in this case. The case is submitted, and we are adjourned for the day.
judges: BERZON, MILLER, VANDYKE